Gerry W. MONROE, et al., Plaintiffs,

and

Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

UNITED AIR LINES, INC. and Air Line Pilots Association, International, Defendants.

Lee F. HIGMAN, et al., Plaintiffs,

and

Equal Employment Opportunity Commission, Plaintiff-Intervenor,

v.

UNITED AIR LINES, INC. and Air Line Pilots Association, International, Defendants.

Nos. 79 C 360, 79 C 1572.

United States District Court, N.D. Illinois, E.D.

March 18, 1983.

George F. Galland, Jr., Davis, Miner, Barnhill & Galland, Chicago, Ill., for plaintiff Buoy.

Edward L. Foote, Edward J. Wendrow, Robert Hermes, Winston & Strawn, Chicago, Ill., for defendant United.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On September 29, 1982 this Court entered judgment on the original jury verdicts in favor of 112 individual plaintiffs [1] and against United Air Lines, Inc. ("United"). On October 26 this Court amended those judgments by entering judgments for double damages based on the jury's special interrogatory answer finding United's violation of the Age Discrimination in Employment Act ("ADEA") to have been willful.

John W. Buoy ("Buoy") has moved for summary judgment against United, contending this Court's earlier judgments and Buoy's November 17, 1982 Affidavit ("Buoy Aff.") establish United's liability for violations of his rights under ADEA. Although Buoy's use of Fed.R.Civ.P. ("Rule") 56 is unorthodox, for the reasons stated in this

---

1. As the result of a later ruling by this Court, 111 rather than 112 plaintiffs are now prevailing parties.

memorandum opinion and order Buoy's motion is granted.[2]

\* \* \* \* \* \*

In 1981 Buoy received the court-authorized Notice of the pendency of the *Monroe* and *Higman* class actions. That Notice contained (at 2–3) the following paragraph (footnote in original):

> If you are among the persons to whom this notice is addressed and you wish to become an additional party plaintiff, you should file your consent to be made a party plaintiff with the Clerk of the Court. It is entirely your own decision whether or not to do so and, if you do elect to become a party plaintiff, whether you prefer to be represented by the present plaintiffs' attorneys[1] or by an attorney of your choosing. If you file a consent through a separate attorney, your Notice of Consent should be under the caption of the cases as listed above, should contain your name, address, telephone number, date of birth, date of signing and signature, and should state: "I hereby consent to be a party plaintiff in this case."

Footnote 1 to the Notice identified the attorneys for the plaintiffs then of record and said: "If you wish them to represent you, you should write them directly."

Buoy timely filed with the Clerk of Court a written consent to be a party plaintiff. However, he neither communicated with the attorneys already of record for the prior plaintiffs nor arranged for separate representation. As a result Buoy's presence was never called to this Court's attention, and his claims did not go to the jury.

Buoy's present effort may arguably be viewed in either of two ways: as a party plaintiff seeking the benefit of the judgment against United, or as a non-party plaintiff invoking principles of offensive collateral estoppel. Both perspectives entitle him to relief.

First, the opt-in provisions of 29 U.S.C. §§ 216(b) and 626(b) literally make those who exercise that right *parties* to representative actions they have joined. See *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 580 (7th Cir.1982). Though Buoy did not heed the Notice by designating counsel to act for him, he did comply with the statutory consent requirement. That was enough to make him a plaintiff. As a plaintiff he has derived the benefit of the jury's determinations adverse to United, just as he would have borne the burdens of the jury's determinations had they been favorable to United and against the plaintiffs.[3] And Buoy Aff. ¶ 1 asserts—and United does not contest—the one essential element of Buoy's claim the jury did not determine: that *he* was forcibly retired under United's Age 60 Policy. Together the jury's determinations and Buoy's uncontested affidavit place him on a par (save for the question of damages) with the parties whose claims actually went to the jury.

Suppose however that were not the case—that Buoy came into this case in a partially flawed way that did not make him

---

2. Buoy has not addressed the subject of damages, or his possible entitlement to reinstatement by way of this Court's January 12, 1983 order granting reinstatement on specified terms to 94 plaintiffs who so elected. Those matters will obviously require further submissions by the parties.

Of course the original jury did not determine Buoy's claims and thus his individual damages. Because that jury had long ago disbanded when Buoy filed his November 19, 1982 motion to reopen proof, this Court denied that motion. At this point this Court will await the parties' suggestions as to the handling of the open issues relating to Buoy's remedies after they have had a chance to review this opinion.

3. Fortunately there is no need to consider what the situation would have been had the jury ruled against United as to some plaintiffs and for United as to others. Buoy's neglect to designate counsel in that event would have posed a knotty problem. But under the actual circumstances here the result is clear. As the Notice at 3 specifically stated:

> If however you decide to join the case by filing your consent, you will be bound by the judgment of the court on all issues in the case, whether it is favorable or unfavorable to you.

Though United objected to the *concept* of the Notice (as an invitation to prospective plaintiffs to join in the suit), it expressed no quarrel whatever with that substantive provision.

a full-fledged plaintiff here.[4] In that event he still asks to bar United from relitigating what it has fought and lost in its contest with the unquestioned plaintiffs. Such a contention looks much like the classic offensive collateral estoppel argument, and it bears at least brief analysis.

As a technical matter a summary judgment motion may not really be just the right vehicle for an argument like Buoy's.[5] That point aside, in the usual offensive collateral estoppel situation the preclusive effect of the earlier judgment will be limited to preventing relitigation of certain discrete issues, and the earlier judgment will not itself determine the *liability* of a defendant to a later plaintiff. *See Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.,* 553 F.Supp. 962, 965 (N.D.Ill.1982). But again Buoy has filled that ordinary gap between precluded issues and established liability by filing his affidavit.

United first contends (Ans. Mem. 2–3) Buoy lacks "standing" to move for summary judgment because he never became a party to these consolidated actions. That position must be rejected out of hand, for it would unreasonably treat Buoy's unequivocal and timely consent as a total nullity. Even if Buoy were not a full-fledged party (the doubtful proposition assumed arguendo for this part of this opinion), surely he opted into this case sufficiently to acquire standing to assert his interest.

United's contention (Ans. Mem. 4–5) Buoy was a "wait-and-see" plaintiff is equally without merit. That concept stems from the Supreme Court's direction such a plaintiff should not benefit from the offensive use of collateral estoppel, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330–31, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). It simply has no application to Buoy: He

leaped in and did not wait. Buoy is more the invisible plaintiff than the calculating one described in *Parklane Hosiery.* See R. Mem. 4–6.

Finally United contends (Ans. Mem. 5–6) it can litigate against Buoy a defense this Court held waived by its failure to plead that defense in its *Higman* Answer.[6] That might perhaps be a tenable argument in the garden-variety offensive collateral estoppel case, in which the name of the game is issue preclusion and not claim preclusion. But the simple answer here is in the specific language of the Notice governing Buoy's opt-in consent (see n. 3). This Court's decision on the waiver issue was made under that ground rule, applicable alike to the opt-in plaintiff *and to United:*

[Y]ou will be bound by the judgment of the court on all issues in the case, whether it is favorable or unfavorable to you.

See R. Mem. 6–9.

Indeed even in the usual collateral estoppel situation United's position is untenable. It has not shown why it should be allowed to litigate with Buoy the waived defense it could not relitigate with any of the *Higman* plaintiffs. Nor has it shown why it should be allowed to relitigate the question whether the defense was waived. *See* Restatement (Second) of Judgments §§ 27–29 (1982).

In short, even were this case one for offensive collateral estoppel the very considerations of fairness and judicial economy that supported the Supreme Court's adoption of that doctrine in *Parklane Hosiery,* 439 U.S. at 329–31, 99 S.Ct. at 650–51, counsel granting Buoy's motion in this action. United had the opportunity to litigate—both fully and fairly—all the issues raised in *Higman,* and there is no identified unfairness in precluding it from relitigating

---

**4.** That assumption is strained indeed, given the language of both the opt-in statute and the Notice. It is indulged arguendo only to show the invalidity of United's position in any case.

**5.** This Court has noted previously the technical flaw in invoking collateral estoppel principles under Rule 56. *See Wetherill v. University of Chicago,* 548 F.Supp. 66, 67 & n. 3 (N.D.Ill. 1982). Again this Court will ignore that technical flaw and rule on the merits.

**6.** This assertion would plainly be unavailable to United if Buoy is viewed as a *Higman* plaintiff, for in that case it has already been litigated directly for Buoy's benefit. This then represents the only potential difference between Buoy's being considered a party and a non-party as the result of his opt-in consent.

any of those issues against Buoy. *Id.* at 331–33, 99 S.Ct. at 651–52. Moreover, United has not challenged Buoy's assertion he was forcibly retired, the gravamen of the *Higman* Complaint and the one individualized liability issue the jury did not determine as to Buoy.

### Conclusion

Whatever view is taken of the effect of Buoy's opt-in notice, this Court finds there is no genuine issue of fact material to the question of United's liability to Buoy under ADEA. Buoy is therefore entitled to judgment on the issue of liability alone. This Court will await the motion of either Buoy or United suggesting the appropriate means of dealing with the issues of relief: Buoy's claimed damages and any prayer for reinstatement.